# In the United States Court of Federal Claims

BID PROTEST
No. 21-1102C
Filed Under Seal: June 22, 2021
Reissued: July 14, 2021[*]

|  |  |  |
|---|---|---|
| APT RESEARCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Post-Award Bid Protest; Judgment Upon |
| v. | ) | the Administrative Record, RCFC 52.1; |
| | ) | Best Value. |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ARES TECHNICAL SERVICES | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |
| | ) | |

*W. Brad English*, Counsel of Record, *Jon D. Levin,* Of Counsel. *Emily J. Chancey*, Of Counsel*, J. Dale Gipson*, Of Counsel, Maynard, Cooper & Gale, P.C., Huntsville, AL, for plaintiff.

*Michael D. Austin*, Trial Attorney, *Deborah A. Bynum*, Assistant Director, *Martin F. Hockey, Jr.*, Acting Director, *Brian M. Boynton*, Acting Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, *Cpt. Carlos Pedraza*, Of Counsel, United States Army, for defendant.

*Daniel R. Forman*, Counsel of Record, *James G. Peyster*, Of Counsel, Crowell & Moring, LLP, Washington, DC, for defendant-intervenor.

---

[*] This Memorandum Opinion and Order was originally filed under seal on June 22, 2021. ECF No. 47. The parties were given an opportunity to advise the Court of their views with respect to what information, if any, should be redacted from the Memorandum Opinion and Order. On July 14, 2021, plaintiff filed a joint status report on behalf of the parties indicating that no redactions are necessary. ECF No. 49. And so, the Court is reissuing its Memorandum Opinion and Order, dated July 14, 2021, as the public opinion.

<u>**MEMORANDUM OPINION AND ORDER**</u>

<u>GRIGGSBY, Judge</u>

## I.      INTRODUCTION

Plaintiff, APT Research, Inc. ("APT"), brings this post-award bid protest action challenging the United States Missile Defense Agency's ("MDA") evaluation process and decision to award a contract to support the Missile Defense System (the "MDS Contract") to ARES Technical Services Corporation ("ARES").  The parties have filed cross-motions for judgment upon the administrative record on the issue of whether the MDA's evaluation process for the MDS Contract and award decision were reasonable.  *See generally* Pl. Mot.; Def. Mot.; Def.-Int. Mot.  For the reasons set forth below, the Court:  (1) **DENIES** APT's motion for judgment upon the administrative record; (2) **GRANTS** the government's and ARES's respective cross-motions for judgment upon the administrative record; and (3) **DISMISSES** the complaint.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.      Factual Background

This bid protest involves a challenge to the MDA's evaluation process and decision to award the MDS Contract to ARES.  APT is an unsuccessful offeror in connection with that procurement.  *See* AR2567.

As background, the MDA's mission is to develop and deploy a layered Missile Defense System ("MDS") to defend the United States, its deployed forces, its allies and friends from missile attacks in all phases of flight.  *See* https://www.mda.mil.  As part of this mission, the MDA requires, among other things, agency-wide safety engineering services to support the MDS, which include simulated flight and ground tests as well as the development, implementation and execution of safety and occupational health programs.  AR302; AR2454.

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the administrative record ("AR"); APT's motion for judgment upon the administrative record ("Pl. Mot."); and the government's and ARES's cross-motions for judgment upon the administrative record ("Def. Mot."; "Def.-Int. Mot."). Except where otherwise noted, the facts cited herein are undisputed.

APT is the incumbent provider of safety engineering services to the MDA.  *See* Am. Compl. at ¶ 34.

### 1.     The RFP

The contract at issue was awarded pursuant to the MDA's Request for Proposals No. HQ0858-20-R-0003 ("RFP").  *Id.* at ¶¶ 4-5.  On June 1, 2020, the MDA issued the RFP to procure continued safety engineering services to support the MDS.  AR33; AR302; AR2454. The RFP provides that the MDA would use the following four factors to evaluate proposals:  (1) Mission Capability; (2) Information Management and Control Plan Services; (3) Organizational Conflict of Interest Management Plan; and (4) Cost and Price.  AR410.

The RFP states that the MDA would award the MDS Contract to the offeror whose proposal constitutes the best value to the government, using a trade-off analysis of two of the evaluation factors:  (1) Mission Capability and (2) Cost and Price.  *Id.*  In this regard, the RFP states that the Mission Capability factor is "significantly more important than Cost and Price." *Id.*  The RFP also states that "[a]ward may be made to a higher rated, higher priced [o]fferor where the Source Selection Authority . . . reasonably determines that the technical superiority of the higher priced [o]fferor outweighs the price differential."  AR411.

The RFP requires offerors to submit proposals in six volumes.  *See* AR358.  Specifically relevant to this dispute, the RFP provides that offerors are required to address the following six subfactors of the Mission Capability factor in Volume III of their proposals:  (1) Safety Risk Acceptance Package Development and Coordination; (2) Safety Requirements Tailoring Process Support; (3) Program Safety Documentation Review; (4) Test Event Safety Oversight; (5) Occupational Safety & Health Program; and (6) Human Capital Management.  AR364.  The RFP also provides that the Human Capital Management subfactor is comprised of the following four elements:  (1) recruit qualified personnel; (2) retain qualified personnel; (3) problem resolution strategy; and (4) key staff position defined as Contract Program Manager ("CPM").  AR365-AR366.  With regards to the fourth element concerning the CPM, Section L of the RFP states that every offeror "shall provide a bilaterally-signed employment agreement (employment contingent on contract award) for the key staff position."  AR396.  Section M of the RFP similarly requires offerors to provide "a bilaterally-signed employment agreement that stipulates employment beginning on or before the first day of contract period of performance for this

3

effort." AR417.

Section L of the RFP further provides that:

> Offerors shall assume that the Government has no prior knowledge of the Offeror's experience and will base its evaluation on the information presented in the Offeror's proposal. . . . The Offeror's proposal shall include all of the information requested and shall comply fully with these Section L instructions. Failure to do so may cause the Offeror's proposal to be eliminated from consideration for award.

AR356. In addition, Section M of the RFP provides that all offerors are "required to meet all solicitation requirements, such as terms and conditions, representations and certifications, and technical requirements, in addition to those identified as factors and subfactors to be eligible for award." AR411.

The RFP also provides that the MDA will evaluate proposals and award the MDS Contract without conducting discussions. AR383. But, the RFP allows the MDA to seek clarification, as described in FAR § 15.306(a). *Id.*

With regards to the evaluation process, the RFP provides that the MDA would assign strengths, weaknesses, significant weaknesses or deficiencies to each proposal. AR413. In this regard, the RFP states that each offeror would receive one of the following five adjectival ratings under each of the six subfactors for the Mission Capability factor:

| Color Rating | Adjectival Rating | Description |
|---|---|---|
| Blue | Outstanding | Proposal indicates an exceptional approach and understanding of the requirements and contains multiple strengths, and risk of unsuccessful performance is low. |
| Purple | Good | Proposal indicates a thorough approach and understanding of the requirements and contains at least one strength, and risk of unsuccessful performance is low to moderate. |
| Green | Acceptable | Proposal meets requirements and indicates an adequate approach and understanding of the requirements, and risk of unsuccessful performance is no worse than moderate. |
| Yellow | Marginal | Proposal has not demonstrated an adequate approach and understanding of the requirements, and/or risk of unsuccessful performance is high. |

| | | |
|---|---|---|
|  Red | Unacceptable | Proposal does not meet requirements of the solicitation, and thus, contains one or more deficiencies, and/or risk of unsuccessful performance is unacceptable. Proposal is unawardable. |

*Id.*

The RFP also requires that the MDA evaluate cost and price for reasonableness and cost realism. *See* AR418. In this regard, the RFP states that the MDA will evaluate costs in accordance with FAR § 15.404. *Id.* The RFP also includes benchmark direct labor rates that were to be considered estimates of "minimum realistic average direct hourly rate[s]." AR370. In this regard, the RFP provides that offerors that propose lower labor rates than these benchmarks will receive an unfavorable assessment in the form of cost realism adjustments. *Id.*

Lastly, the RFP also requires that offerors submit a total compensation plan for evaluation in accordance with FAR § 52.222-46 and the established minimum baseline expectations for fringe benefits, including subsidized health insurance and vacation hours. AR376. In this regard, the RFP states that any offeror that proposed lower fringe benefits than those included in the baseline expectations would have to explain how its proposed alternative compensation methods would enable it to recruit and retain qualified workers. *Id.*

## 2. The Evaluation Process And Amendment 003

The MDA received timely proposals from three offerors, including APT and ARES.[2] AR522-AR1078; AR1079-AR1826. Thereafter, the MDA issued Amendment 003 to the RFP on August 12, 2020. AR3969. Amendment 003 incorporates FAR § 52.204-24 into the RFP. AR3972. It is undisputed that ARES did not provide a FAR § 52.204-24 certification with its revised proposal in response to Amendment 003. Pl. Mot. at 18-19; Def. Mot. at 8, 25. It is also undisputed that the MDA's contracting officer contacted ARES about the lack of a FAR § 52.204-24 certification in ARES's revised proposal. Pl. Mot. at 17-18; Def. Mot. at 25-26; Dec. of April L. Paul ¶ 6.

While the contracting officer requested that ARES provide this certification, it is further undisputed that ARES's proposal would have been awardable even if ARES had not submitted a

---

[2] The MDA also received a timely proposal from Bastion Technologies, Inc. AR1827-AR2329.

FAR § 52.204-24 certification. Pl. Resp. at 6; Def. Reply at 4-5. Lastly, it is also undisputed in this case that APT did not provide a bilaterally-signed employment agreement for its proposed CPM, Clark Kilgore, with its revised proposal. AR943-AR945; Pl. Mot. at 12; Def. Mot. at 8.

During the evaluation process, the MDA performed a cost realism analysis of the proposals submitted by APT, ARES and one other offeror, for "Professional Employee Total Compensation, affordability, reasonableness, and cost realism." AR2331. During the cost realism analysis, the MDA used benchmark estimates of adequate labor rates and fringe benefits developed using incumbent contractor rates and labor market data. AR2333-2334. The MDA compiled its findings from the cost realism analysis in a cost/price evaluation report. *See* AR2330-AR2348. Thereafter, the MDA's mission capability team evaluated the technical elements of each proposal. *See, e.g.*, AR2462.

The MDA's Source Selection Evaluation Board ("SSEB") used the findings of the mission capability team to produce a Proposal Analysis Report ("PAR"). *See* AR2449-AR2564. In the PAR, the SSEB noted that the mission capability team assigned the following combined technical/risk ratings to each offeror:

| Factor 1: Mission Capability | A-P-T Research, Inc. Combined Technical/Risk Rating | | | | ARES Technical Services Corporation Combined Technical/Risk Rating | | | | Bastion Technologies, Inc Combined Technical/Risk Rating | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MCS1: Safety Risk Acceptance Package Development and Coordination | Good | | | | Good | | | | Unacceptable | | | |
| | S | W | SW | D | S | W | SW | D | S | W | SW | D |
| | 2 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 1 |
| MCS2: Safety Requirements Tailoring Process Support | Acceptable | | | | Good | | | | Acceptable | | | |
| | S | W | SW | D | S | W | SW | D | S | W | SW | D |
| | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 0 |
| MCS3: Program Safety Documentation Review | Good | | | | Acceptable | | | | Unacceptable | | | |
| | S | W | SW | D | S | W | SW | D | S | W | SW | D |
| | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| | Good | | | | Acceptable | | | | Marginal | | | |
| | S | W | SW | D | S | W | SW | D | S | W | SW | D |

| | S | W | SW | D | S | W | SW | D | S | W | SW | D |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MCS4: Test Event Safety Oversight | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 1 | 0 |
| MCS5: Occupational Safety & Health Program | Acceptable | | | | Acceptable | | | | Acceptable | | | |
| | S | W | SW | D | S | W | SW | D | S | W | SW | D |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| MCS6: Human Capital Management | Unacceptable | | | | Acceptable | | | | Acceptable | | | |
| | S | W | SW | D | S | W | SW | D | S | W | SW | D |
| | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Factor 2: Information Management and Control Plan – Services | Acceptable | | | | Acceptable | | | | Acceptable | | | |
| Factor 3: OCI Management Plan | Acceptable | | | | Acceptable | | | | Acceptable | | | |
| Factor 4: Cost/Price | | | | | | | | | | | | |
| Proposed Cost | $65,094,711 | | | | $54,941,108 | | | | $52,936,601 | | | |
| *Probable Cost | $65,094,711 | | | | $54,941,108 | | | | $52,702,010 | | | |

AR2460. Specifically relevant to this dispute, APT received an unacceptable rating for the MCS6 evaluation subfactor for failing to provide a bilaterally-signed employment agreement for Mr. Kilgore. AR2472. And so, the MDA determined that APT's proposal was "unawardable" under the terms of the RFP. *Id.*

Thereafter, the SSEB recommended that the MDA's Source Selection Authority ("SSA") award the MDS Contract to ARES, because ARES was the only awardable offeror and ARES presented more than $10 million lower total evaluated cost compared to APT. AR2562-AR2563. And so, the SSEB concluded that ARES's proposal represented the best value to the government. *Id.*

On October 21, 2020, the SSA decided to award the MDS Contract to ARES. AR2567. In the source selection decision, the SSA determined that: (1) ARES submitted the only proposal that did not receive an "unacceptable" technical rating under one of the Mission Capability subfactors and (2) that APT's total evaluated price was more than $10 million higher than ARES's total evaluated price. *Id.* And so, the MDA awarded the MDS Contract to ARES on November 17, 2020. AR2639.

On December 6, 2020, APT filed a bid protest before the Government Accountability Office ("GAO") challenging the award of the MDS Contract to ARES. *See* AR3160-3180. After the GAO denied APT's protest on March 12, 2021, APT filed this bid protest action. *See* AR3955-AR3968.

### B.      Procedural Background

On March 23, 2021, APT filed the complaint in this matter, which it subsequently amended on May 5, 2021. *See generally* Compl; Am. Compl. On March 24, 2021, ARES filed an unopposed motion to intervene, which the Court granted on March 29, 2021. *See generally* Def.-Int. Mot. to Intervene; Order, dated March 29, 2021. On the same day, the Court entered a Protective Order in this matter. *See generally* Protective Order.

On April 12, 2021, the government filed the administrative record, which it subsequently corrected on April 29, 2021. *See generally* AR. On May 5, 2021, APT filed a motion for judgment upon the administrative record. *See generally* Pl. Mot. On May 19, 2021, the government and ARES filed their respective responses and oppositions to APT's motion for judgment upon the administrative record and cross-motions for judgment upon the administrative record. *See generally* Def. Mot.; Def.-Int. Mot.

On May 24, 2021, APT filed a response and opposition to the government's and ARES's respective cross-motions for judgment upon the administrative record and a reply in support of its motion for judgment upon the administrative record. *See generally* Pl. Resp. On May 28, 2021, the government and ARES filed their respective reply briefs in support of their cross-motions. *See generally* Def. Reply; Def.-Int. Reply.

On June 11, 2021, the Court held oral arguments on the parties' cross-motions for judgment upon the administrative record. *See generally* Oral Arg. Tr. The Court issued an oral opinion during the June 11, 2021, oral arguments. The Court issues this written opinion consistent with its prior oral ruling in this matter.

## III.      LEGAL STANDARDS

### A.      Bid Protest Jurisdiction

The Tucker Act grants the United States Court of Federal Claims jurisdiction over bid protests brought by "an interested party objecting to a solicitation by a Federal agency for bids or

proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). This Court reviews agency actions that are at issue in a bid protest matter under the Administrative Procedure Act's ("APA") "arbitrary and capricious" standard. *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of review set forth in the APA). Under this standard, an "'award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).

In this regard, the United States Court of Appeals for the Federal Circuit has explained that, "[w]hen a challenge is brought on the first ground, the test is 'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a "heavy burden" of showing that the award decision had no rational basis.'" *Id.* (quoting *Impresa*, 238 F.3d at 1332-33). "'When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.'" *Id.* (quoting *Impresa*, 238 F.3d at 1333). In addition, when reviewing an agency's procurement decision, the Court should recognize that the agency's decision is entitled to a "presumption of regularity." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977). "The [C]ourt should not substitute its judgment for that of a procuring agency . . . ." *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997). And so, "[t]he protestor must show, by a preponderance of the evidence, that the agency's actions were either without a reasonable basis or in violation of applicable procurement law." *Info. Tech. & Applications. Corp. v. United States*, 51 Fed. Cl. 340, 346 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003) (citation omitted).

The Court's standard of review "is highly deferential." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). As long as there is "'a reasonable basis for the agency's action, the [C]ourt should stay its hand even though it might, as an original proposition, have reached a different conclusion . . . .'" *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1301 (D.C. Cir. 1971)). But, if "the agency 'entirely fail[s] to consider an important aspect of the

problem, [or] offer[s] an explanation for its decision that runs counter to the evidence before the agency,'" then the resulting action lacks a rational basis and, therefore, is defined as "arbitrary and capricious." *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

In addition, this Court affords contracting officers a great deal of discretion in making contract award decisions when the contract is to be awarded to the offeror that will provide the best value to the government. *See Banknote Corp. of Am.*, 365 F.3d at 1355-56; *TRW, Inc. v. Unisys Corp.*, 98 F.3d 1325, 1327-28 (Fed. Cir. 1996); *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996); *Lockheed Missiles & Space Co. v. Bentsen*, 4 F.3d 955, 958-59 (Fed. Cir. 1993). In this regard, the Court has held that the government's best value determination should not be disturbed, if the government documents its analysis and includes a rationale for any business judgments and trade-offs made in reaching that decision. *See Blackwater Lodge & Training Ctr., Inc. v. United States*, 86 Fed. Cl. 488, 514 (2009). And so, a decision to award a contract is least vulnerable to challenge when that decision is based upon a best value determination. *PlanetSpace, Inc. v. United Sates*, 96 Fed. Cl. 119, 125 (2010).

## B. Judgment Upon The Administrative Record

Unlike a summary judgment motion brought pursuant to RCFC 56, "the existence of genuine issues of material fact does not preclude judgment on the administrative record" under RCFC 52.1. *Tech Sys., Inc. v. United States*, 98 Fed. Cl. 228, 242-43 (2011); *see* RCFC 56. Rather, the Court's inquiry is whether, "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006) (citing *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005)).

## C. Injunctive Relief

Lastly, the Tucker Act authorizes this Court to "award any relief that the court considers proper, including . . . injunctive relief" in bid protest matters. 28 U.S.C. § 1491(b)(2); *see* RCFC 65. In deciding whether to issue a permanent injunction, the Court "considers: (1) whether . . . the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to

the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief." *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing *Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.")); *see also Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009). In this regard, the Federal Circuit has held that:

> No one factor, taken individually, is necessarily dispositive. If [an injunction] is granted by the trial court, the weakness of the showing regarding one factor may be overborne by the strength of the others. If the injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial.

*FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993) (citation omitted).

This Court has also found success upon the merits to be "the most important factor for a court to consider when deciding whether to issue injunctive relief." *Dellew Corp. v. United States*, 108 Fed. Cl. 357, 369 (2012) (citing *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1312 (Fed. Cir. 2007)). But, while success upon the merits is necessary, it is not sufficient alone for a plaintiff to establish an entitlement to injunctive relief. *See Contracting, Consulting, Eng'g LLC v. United States*, 104 Fed. Cl. 334, 353 (2012) ("Although plaintiff's entitlement to injunctive relief depends on its succeeding on the merits, it is not determinative because the three equitable factors must be considered, as well.") (citations omitted)).

## IV. LEGAL ANALYSIS

APT asserts five challenges to the MDA's evaluation process and award decision for the MDS Contract, namely that: (1) the MDA acted arbitrarily, irrationally and contrary to applicable law by assigning APT's proposal an unacceptable rating; (2) the MDA's cost realism analysis was arbitrary, irrational and violated FAR § 15.404-1(d); (3) the MDA failed to evaluate professional compensation, as required by FAR § 52.222-46; (4) the MDA arbitrarily and irrationally evaluated the offerors' experience under the Mission Capability factor; and (5) the MDA's source selection analysis was arbitrary and capricious, an abuse of discretion and

contrary to law. Pl. Mot. at 12-37. And so, APT requests, among other things, that the Court enjoin the MDA from proceeding with performance under the MDS Contract. *Id.* at 39.

The government and ARES counter that the MDA's evaluation process and award decision were rational and consistent with the terms of the RFP and applicable law. Def. Mot. at 20-32; Def.-Int. Mot. at 13-48. And so, they request that the Court sustain the MDA's award decision. Def. Mot. at 33; Def-Int. Mot. at 49-50.

For the reasons that follow, a careful review of the administrative record shows that the MDA's evaluation process and decision to award the MDS Contract to ARES were reasonable and consistent with the terms of the RFP. And so, the Court: (1) **DENIES** APT's motion for judgment upon the administrative record; (2) **GRANTS** the government's and ARES's cross-motions for judgment upon the administrative record; and (3) **DISMISSES** the complaint.

A.      **The MDA Did Not Err In Determining**
        **That APT's Proposal Was Unacceptable**

As an initial matter, APT has not shown that the MDA acted arbitrarily, irrationally, or contrary to applicable law by assigning APT's proposal an unacceptable rating under the RFP's Mission Capability factor. It is undisputed that APT did not provide a bilaterally-signed employment agreement for its proposed Contract Program Manager, Mr. Clark Kilgore, with its revised proposal. Pl. Mot. at 12; Def. Mot. at 8; *see also* AR943-AR945. Because the record evidence shows that APT was required to do so under the terms of the RFP, the MDA reasonably found APT's proposal to be "unawardable." AR2472.

In this regard, a plain reading of the RFP makes clear that APT and all other offerors were required to provide a bilaterally-signed employment agreement for the individual proposed to serve as the CPM for the MDS Contract. Notably, Section L of the RFP provides that:

> The Offeror *s*hall provide a bilaterally-signed employment agreement (employment contingent on contract award) for [the proposed CPM]. The bilaterally-signed employment agreement must stipulate employment beginning on or before the first day of contract period of performance for this effort.

AR396. Section M of the RFP similarly requires that offerors provide "a bilaterally-signed employment agreement [for the proposed CPM] that stipulates employment beginning on or before the first day of contract period of performance for this effort." AR417. And so, the Court

reads these provisions in the RFP to require that APT provide a bilaterally-signed employment agreement for its proposed CPM with its final revised proposal. AR396; *see Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 432 n.9 (1995) (recognizing that the use of the word "'shall' generally means 'must'").

The Court is also not persuaded by APT's argument that it had no obligation to provide such an agreement for Mr. Kilgore, because the RFP does not require a bilaterally-signed employment agreement for existing employees. Def. Mot. at 12-15; Pl. Resp. at 2-3. To support this argument, APT points to the language in Section L of the RFP providing that "(employment contingent on contract award)," and APT argues that Mr. Kilgore did not need to sign an employment agreement for the MDS Contract because he is an existing employee of APT. Pl. Mot. at 13-14. But, the Court reads the language cited by APT to mean that employment as the CPM *for the MDS Contact* would be contingent upon the award of that contract to the successful offeror. AR396. Such a reading is in harmony with the plain text of Section M of the RFP, which provides that the bilaterally-signed employment agreement would stipulate "employment beginning on or before the first day of contract period of performance for this effort." AR417. Given this, the plain text of the RFP requires a bilaterally-signed employment agreement for any individual proposed to be the CPM.

Because it is undisputed that APT did not provide the bilaterally-signed employment agreement at issue, the record evidence in this case makes clear that the MDA reasonably assigned "unacceptable" rating to APT's proposal. Def. Mot. at 8; Pl. Mot. at 12; AR2460.

APT's argument that the MDA erred by failing to seek clarification from APT regarding the missing employment agreement for Mr. Kilgore is equally unavailing. Pl. Mot. at 15-17; Pl. Resp. at 4-5; Oral Arg. Tr. at 18:3-18:21. APT argues that the MDA should have engaged in discussions with, or sought clarification from, APT regarding the missing employment agreement. Pl. Mot. at 15-17; Pl. Resp. at 4-5. But, the RFP makes clear that an discussions with APT would have been inappropriate, because the RFP requires that the MDA "evaluate proposals and award a contract without discussions with [o]fferors, (except clarifications as described in FAR 15.306(a))." AR383.

APT's claim that the MDA should have sought clarification from APT regarding the bilaterally-signed employment agreement for Mr. Kilgore is also dubious. FAR § 15.306(a)(2)

makes clear that clarifications may only resolve minor or clerical errors with regards to APT's proposal. *See* FAR § 15.306(a)(2) (providing that "[i]f award will be made without conducting discussions, offerors may be given the opportunity to clarify certain aspects of proposals . . . or to resolve minor or clerical errors."). The missing bilaterally-signed employment agreement for Mr. Kilgore is not the type of minor or clerical error contemplated by FAR § 15.306(a)(2).[3]

While perhaps on somewhat stronger footing, APT's argument that the MDA engaged in unequal treatment of the offerors does not provide a sufficient basis for the Court to set aside the MDA's award decision. APT argues that the MDA engaged in unequal treatment of offerors, because the agency's contracting officer sought clarification from ARES's regarding a FAR § 52.204-24 certification that was not included in ARES's final revised proposal. Pl. Mot. at 20; *see also* Oral Arg. Tr. at 18:22-19:8. But, even if it the MDA erred in seeking clarification from ARES, the record evidence makes clear that APT has not been prejudiced by this alleged conduct for two reasons.

First, APT has not shown that it was prejudiced by the clarification at issue because, its own proposal was "unacceptable," and thus, "unawardable" under the terms of the RFP. AR2472. And so, APT would not have been in a position to be awarded the MDS Contract, if the agency had not sought clarification from ARES.

APT also fails to establish prejudice, because the administrative record shows that the clarification at issue did not alter ARES's final revised proposal. It is undisputed that ARES had no obligation to submit a FAR § 52.204-24 certification with its proposal because ARES had previously submitted a FAR § 52.204-26 certification to the MDA. Pl. Mot. at 18; Def. Mot. at 8; *see also* AR1263. The MDA's contracting officer, April L. Paul, also makes clear in her declaration that "even if ARES did not respond to the MDA's question regarding the FAR § 52.204-24 certification, ARES'[s] proposal would still have been acceptable and contained no deficiencies; thus it still would have been awardable." Dec. of April L. Paul ¶ 8. Given this, the

---

[3] APT also argues that the MDA had a duty to inquire into missing proposal information based upon the agency's past contracting history with APT. Pl. Mot. at 16-17. But, this argument is unavailing, because it is expressly contradicted by the terms of the RFP. Section L of the RFP states that offerors "shall assume that the Government has no prior knowledge of the [o]fferor's experience and will base its evaluation on the information presented in the [o]fferor's proposal. Alternate proposals . . . that deviate in any way from the solicitation . . . will not be considered nor evaluated." AR356.

MDA's decision to seek clarification from ARES regarding the missing FAR § 52.204-24 certification did not alter the fact that ARES's proposal offered the best value to the government. AR2567.

**B.      APT Fails To Show Prejudice Regarding The MDA's Other Alleged Errors**

Because the record evidence shows that the MDA reasonably determined that APT's proposal was "unacceptable" and thus, "unawardable" under the terms of the RFP, the Court need not address the other evaluation errors alleged in this case. APT simply has not established that it was prejudiced by any of these alleged evaluation errors, given the deficiency in its own proposal. AR2460. And so, the Court must also DENY these claims. *See Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1378 (Fed. Cir. 2009) (protestor must show that "but for the [alleged] error, it would have had a substantial chance of securing the contract").[4]

A careful review of the administrative record also shows that the MDA's evaluation process was rational and that the agency reasonably decided to award the MDS Contract to ARES, consistent with the requirements of the RFP. In this regard, the record evidence shows that the MDA's cost evaluation team carefully analyzed all responsive proposals and determined that the proposed costs all of the offerors were reasonable and realistic, consistent with the terms of the RFP. AR2339; AR2343; AR2347-2348; *see also* AR419 (requiring that the MDA conduct an independent cost realism analysis to determine whether each offeror's proposed costs are reasonable and realistic for the work to be performed). The record evidence also makes clear that the MDA's SSEB carefully evaluated all responsive proposals and prepared a detailed proposal analysis report that: (1) outlined the technical evaluation criteria in the RFP and their respective importance; (2) provided the evaluation results for each proposal; (3) summarized and

---

[4] The administrative record also calls into doubt several of APT's claims challenging the MDA's evaluation process. For example, APT's claim that the MDA erred by failing to compare ARES's proposed costs to APT's costs is contradicted by the terms of the RFP, which provides that the MDA would analyze each offeror's proposed costs for reasonableness and realism by comparing these costs to benchmark estimates of adequate labor rates and fringe benefits that were developed using incumbent contractor rates and labor market data. AR370-AR371; AR2339-AR2444. APT's claim that the MDA failed to appropriately credit its prior experience is similarly belied by the record evidence showing that the MDA assigned a strength to APT's proposal for proposing to use staff that had "extensive experience providing Ground Safety at missile testing sites." AR2470.

discussed the differences between each proposal; and (4) recommended that the SSA award the MDS Contract to ARES.  AR2448-AR2564.

The source selection decision for the MDS Contract also reflects the independent best value determination of the SSA, based upon the RFP's evaluation factors and the evaluation results for each proposal.  AR2567 (showing that the SSA reviewed the evaluation results and independently determined that:  (1) ARES submitted the only proposal that did not receive an "unacceptable" technical rating under one of the Mission Capability subfactors and (2) APT's total evaluated price was more than $10 million higher than ARES's total evaluated price).  AR2567.  And so, the Court is satisfied that the MDA reasonably determined that ARES's proposal represented the best value to the government in this case.

Because APT has not shown that the MDA's evaluation process and decision to award the MDS Contract to ARES were irrational, or contrary to the terms of the RFP or applicable law, the Court will not set aside the sound determinations of the MDA.

### C.      APT Is Not Entitled To Injunctive Relief

Because APT has not prevailed upon the merits of any of its bid protest claims in this case, the Court must also DENY APT's request for injunctive relief.  *Argencord Mach. & Equip., Inc. v. United States*, 68 Fed. Cl. 167, 176 (2005).

### V.      CONCLUSION

In sum, APT has not shown that the MDA erred in determining that its proposal was "unacceptable," and thus "unawardable," under the terms of the RFP for the MDS Contract. APT similarly fails to show that it has been prejudiced by any of the other alleged evaluation errors in this case.  And so, the Court:

1. **DENIES** APT's motion for judgment upon the administrative record;

2. **GRANTS** the government's and ARES's respective cross-motions for judgment upon the administrative record; and

3. **DISMISSES** the complaint.

The Clerk shall enter judgment accordingly.

Each party to bear its own costs.

Some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Order entered in this matter on March 29, 2021. This Memorandum Opinion and Order shall therefore be filed **UNDER SEAL**. The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted in accordance with the terms of the Protective Order prior to publication. The parties shall **FILE** a joint status report identifying the information, if any, that they contend should be redacted, together with an explanation of the basis for each proposed redaction on or before **July 14, 2021**.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge